18th, 1948, Wayne Bergman v. The Workers' Compensation Commission, starting at 1-9-13 at 3 o'clock. Counsel, you may proceed. Thank you, Your Honor. I have a voucher. List, please. May it please the Court, Jennifer Bonestell here for the plaintiff, appellant Wayne Bergman. I will be honest, I was a little surprised that this case, which is so fact sensitive, was approved for oral arguments. So I'm assuming, or maybe I shouldn't, that that is because of the issue of the borrowing and loaning employer, which has arisen here. I will therefore cut to the chase. If I'm wrong, please interrupt me and correct me and I will get back on point, but I believe the case has been fairly good in regards to the facts, so I don't think you need me to recite what you already know. In this case, Wayne Bergman, who is an employee for Star, Trans4, Star Leasing, has been given to Swift Transportation as a truck driver. And we're here today because I'm essentially arguing that the commission, the trial court, and actually the comments as well have put the car before the horse in finding conclusions as opposed to facts on this borrowing and loaning issue. Everyone is arguing that essentially this contract between Star and Swift gives Swift the ability to get out from paying under the Workers' Compensation Act. However, the Workers' Compensation Act, which is an act designed not to alter the power structure between employer and employee, but instead to step in and basically protect an employee once something has happened, I can't imagine that it gives more power to the employer to advocate their responsibilities under the act. And in fact, if that were the case, I believe that most employers would then find some way to begin with the employee signing some sort of contract saying that they can advocate their responsibilities under the Work Comp Act. That's because the Work Comp Act is really designed to protect all employees regardless of situation. My client, Wayne Bergman, is not a party to the contract between Star and Swift. He's an alien to it, although he's a third-party beneficiary of it in some ways. He has no way to enforce it under Illinois law or Arizona law. There's no mechanism for him to stand in. Well, that's true. I mean, the employee is not going to be a party to that contract between two entities. Correct. However, he would be stuck with whatever the law provides in those circumstances. Well, you know, I would say in certain cases that is permissible. But in Illinois law, in this H-29-SCS-305-1A-4, I don't think that that statute on its plain face allows the parties to advocate their responsibilities as to the employee. Well, the employee doesn't decide for themselves who they're employed by, do they? In some ways, yes, Your Honor. I mean, they're the ones who fill out the employee contracts. They're the ones who know where they're employed, know what they're signing up for. I mean, in the sense that somebody has the right to control the direction and the responsibility and the job performance of the employee. Correct. He's not an independent contractor, is he? He's not an independent contractor. You wouldn't say that because then you'd sink your case if you said that. I would sink my case. But you're saying that he's not employed by STAR? What is your argument? Well, Your Honor, I'm saying that basically I make two arguments in the alternative. One, which I think is fact-specific and I'm not going to repeat because you guys are literate and probably have read this over and over again, is that he actually is employed by STAR, and that's what he testified to. But in the alternative, even if this court finds that he's employed by STAR, STAR is a loaning employer underneath the statute. And there's actually – this gets into some of the briefing, but there's actually two ways to define a loaning employer on the statute. One is by saying this is a loaning employer, this is a borrowing employer. And one is saying at the bottom of that part of the statute, H20, ILCS 305-104, an employer whose business or enterprise or substantial property or business of hiring or carrying or furnishing employees. Two other employers. I've only picked on the first part. You said whose employee was the claimant. Are you familiar with the testimony of David Barry, Swift's vice president? Yes, Your Honor. Didn't he testify that the drivers were STAR employees? Yes, Your Honor. Doesn't that have any bearing on this case? It does. I think that goes to the credibility of the witnesses, which is what the commission decided. However, I also think that you can't necessarily take someone's word when they're trying to get out of a murder case as to whether or not they're an employer of the person they're trying to basically advocate their responsibilities to. Let me pick up a second and then jump ahead. There was a written agreement, was there not, between Swift and STAR? Correct. The agreement, at least, said STAR was solely responsible for the direction you controlled the employees and the method of doing so. Extensively, you could argue against it. There was an agreement acknowledging STAR was the employer. Correct? Correct, Your Honor. And then did that Swift on the other hand's president testify that, yes, they were STAR's employees? So what can you tell us that undercuts that? Well, I would say this, Your Honor, and maybe I should actually, before I assume more, do you want me to make an argument with regards to whether or not Swift is actually an employer or with regards to whether or not Swift is borrowing the employer? I think it's pretty clear, at least at this point, I'm not going to prejudge that there's enough evidence to at least make a credible case that a leasing was the employer, but let's make the argument that you're borrowing or loaning employers there. Okay. Well, Your Honor, if I were to show up for work for Steve Kelly today, who is my boss, and he tells me to go over and someone has something for me to do at some other job, regardless of whether or not he calls me a loan employee or the other attorney's office a borrowing employer, I'm doing what I'm supposed to do at his control and behest, but I don't lose my job, so I'm doing what I'm told. What would be the situation if he had the right to refuse that command? Well, then we have a different argument, Your Honor. Well, that's intended, but they testified that this claimant had the right to refuse the job. Didn't he have to take it? Well, according to Dave Barry, he said that they had the right to refuse. However, Wayne Berman, who is the employee, doesn't know that. He doesn't believe he has any right to refuse. Well, it's not a question of what he believes. It's a question of what the commission believes. Does the commission believe he has the right to refuse the job? If the answer to that question is yes, you can hardly call him a borrowed employee. Well, Your Honor, and this is part of the problem that is the commission's decision. Instead of going into such facts and finding these things, I think the record is rather unclear with regards to what they actually found in terms of facts. And instead, they go, well, there's this temp agency issue, and these are normally in the course and scope of temp agencies, and that's not happening here because this is not a temp agency. And they get out forward of the facts without really giving us a clear record as to what their basis is. So I think the issue is, does the commission actually find that fact? I'm not sure that they do. Well, they found that Barry testified that Star Racing was permitted to provide services to other carriers under their agreement, and it wasn't exclusively for Star Racing. And Section 17 of the agreement states that Star Racing was solely responsible for the direction and control of the employees and the methods and means that they used in performing their service. Isn't direction and methods and means and control one of the significant factors for determination of whether a person is a borrowed employee or not? Well, I would say it goes to whether or not someone is an employee at all. But the thing is, where is the direction coming from? If you take them by the word that they're not an employee, let's take that as an example. Let's say that SWIFT is not an employee and go on to a borrowing or a loaning. If Berkeley is acting at the control and behest of Star, but they are loaning him to SWIFT and they have an agreement between them as to how that's going to operate, he's still a borrowed or a loaned employee. He's following someone's behest. He's at someone's direction and control. But that doesn't necessarily mean that he, because SWIFT doesn't tell him, you need to do this, this, this, and this until you're 18. Let's assume I'm a company and I want goods shipped to wherever they go. And I enter into a contract with a carge company and say, I want you to supply me with trucks, tractor, trailer, drivers to take my goods wherever I want them to go. And the carge company says, okay, that's fine. We'll do that. But the carge company retains total control over its driver, measures and needs, and they can turn down any shipment requested of the party that was shipping. Would you call those people borrowed employees, the drivers? Well, in your case, I don't know if we're acting as a trucking company as well, but let me say this. You don't have to be a borrowed employee 100% of the time to be a borrowed employee. I understand. So it depends. Is he acting in the course and scope of the borrowing for this particular employer at the time of this than maybe? Well, it would apply to every contract of carriage. Every contract of carriage. The carge company has a contract with a company to haul goods to a given place and supply the driver of the truck to do it. And under your theory, I guess every time the driver was driving their load, he's a borrowed employee. Well, I am way more familiar with personal injury law, but as the plaintiff determined, let me tell you, I would sue all of them. Well, we sued everybody yesterday, but that's beside the point. So we bring some legal elements into the discussion. Yes, Your Honor. The issue of whether an employee has been borrowed by a second employee is a question of fact to be determined by the commission. The other relevant factor is the case law that says the test for determining the loan employee status consists of two elements, namely, one, whether Swift had the right to direct the control of the manor in which the claimant performed the work, and two, whether there existed a contract for hire between the claimant and Swift. We know the answers there. There was a contract between Starr and Swift, correct? Correct. There was no contract between the claimant and Swift, was there? Correct. What about I think we're down to the right to direct and control? Those are the elements we have to talk about. Well, Your Honor, the trial court did file a contract for hire as well, denying the commission's decision on that same basis. But the thing is, with regards to this management and control issue, just because you are not telling someone you have to do this, this, this, and this, you're not giving them direct comment, doesn't mean you're not controlling their actions. If you are giving them something to do and you are having the other party control and manage their actions, that does mean you're gaining less control. Actually, Mr. Berry testified that he thought he could control Starr's employees if he had to. He just didn't think it happened that often. That goes to whether or not he has control, not whether or not he exercises it. Did he think the claimant was his employer? Did he think and testify that the claimant was Starr's employer? He testified that the claimant was Starr's employer. And he has an agreement to back him up, does he not? He does, Robert. He has an agreement to back him up. He testifies that he's Starr's employer. But then how does William Berkman come to do work for SWIFT? If he's not being borrowed, how does he come to do work for SWIFT at SWIFT's behest, with SWIFT's direction, even if he's not actually talking to the people of SWIFT? He testifies he believes he's getting orders directly from SWIFT through this qualifying system. That being said, even if this qualifies as not accurate, or the condition found was not sufficient, is he still taking control and managed by SWIFT? And he is. He's doing what they want him to do. Now, whether or not he's taking direct orders from them every single day doesn't mean that he's not being controlled by them. He's being controlled by them through Starr. Because Starr is telling him what to do based on what SWIFT is telling them to do. And that brings me back to this 820 ILCS. It says, as to such an employee, the liability of such loaning and borrowing claims is joint and several. As to such an employee. The case law that SWIFT's attorney has funded goes to whether or not there's cost shifting. And I would argue, there is cost shifting. Between them. They have to go after Starr. And they need to get women first. But that doesn't affect my client's right to go after them as the borrowing employer. Can I ask a question? Yes. In your brief about SWIFT was merely a shell corporation. Was there a reason for that argument before the commission? Your Honor, I believe it was raised before the commission. Although not heavily by Mr. Kelly. I looked at the record and I couldn't find it. Okay. You say you have evidence that Starr was a shell corporation. And the commission, you're in favor of addressing the issue. Because as far as I can tell, you're in favor of raising the issue even before the commission or the circuit court. And if that's the case, the issue is forth it. Well, then, Your Honor, if you... I mean, I'll take a look at the argument. I believe it was raised by Mr. Jeanette and Anthony. I apologize. I was not there. I should have made better inference before I stated such a thing in the brief. But I believe it had been raised at both levels. But even if you don't find for the employer a shell corporation and all that stuff, there is still a question of fact as to how Mr. Birdman, who Swift says he has as a Starr employee, comes to work for Swift unless he's being borrowed and or loaned. And loaned, I suppose. The thing is, with regards to that relationship, it is not here on appeal. There should have maybe been an argument as to whether or not he's been a contractor entirely. But they didn't raise that issue. Instead, they're raising this... He's an employee of Starr, so we're not responsible. But the statute makes it clear that if he's being borrowed and loaned, and he is doing Swift's work, he's not an independent contractor for Swift. They have already met. And it's not here before you at this level either, Your Honors. That he is an employee of Starr. And if he's an employee of Starr, it goes back to how does he come to do the work for Swift unless he's being borrowed and loaned. Common sense says you don't show up at your employer's office thinking that you're employed by Starr. You go, oh, why is he going to work for Swift today for no reason whatsoever? I don't know. The Work Comp Act, Your Honors, is designed to protect the employees in all situations when they are injured. And I would argue especially in situations where there is a slight pain going on as to who's responsible and where they're trying to add to his responsibility under the contract he's not party to. I would, at this point, also like to give my time to the Illinois Insurance Fund because I don't believe that they were assigned their own time. If there's any time left? No, there is none. We're a little bit over the chair of time. I don't know why. Okay. Thank you, Your Honors. Counsel? Will the Illinois Insurance Guarantee Fund be allowed to hire an employee? Well, your only need is an employee. They never filed a notice of appeal, so you'd have to split your time with them. Hi. Hi. Perhaps you're going to take the same office as me, which I doubt. Thank you. May it please the Court. Brooke Torendau for the Appalachian District Transportation. I think what my opposing counsel has failed to address in detail is that the borrowing-loan-leave employment relationship still rests on whether there was any direction or control over the supposed loaned employee. In this case, the Commission determined that there was no direction and control on part of SWIFT over Mr. Bergman. Assuming that's true, what was Bergman's connection then with SWIFT, we ask? Rhetorical question. What was he doing there if he wasn't a borrowed employee? He was working for Star Transport. He was never an employee of Star Leasing to my knowledge. He was an employee of Star Transport. Star Leasing entered into a contract with SWIFT under which it was the clear and expressed intent of both parties to create an independent contractor relationship. The petitioner did work under that agreement as a third party. He wasn't even party to the agreement, the independent contractor agreement. So at best, we could call him an independent contractor to SWIFT, but I would argue that he's one step further removed because that was Star Leasing. They were the independent contractor in relation to SWIFT. Their obligation was to provide trucks and drivers for SWIFT. Is that correct? Correct. And they were to hold or pursue the IDAP regulation under SWIFT's IDAP number. Correct. Okay. I don't think that the issue with whose authority they were driving under is determinative. It's been held to be, by this very court, a factor to be considered in the employment relationship, but it is not the only factor and it is not determinative. There are plenty of cases, which I briefed, that this court decided where those same regulations were in effect in the contractor agreement and the court still reached the conclusion that the claimant was not an employee of the respondent. Now, as far as why the claimant in this case, Mr. Bergman, was doing work for SWIFT, I would argue that just because you're doing work for another entity does not make you an employee. Otherwise, why would he even have anything such as an independent contractor? Why would there be any case law surrounding that concept? You can perform work for – he can be driving freight for SWIFT. He doesn't need to be an employee of SWIFT. He was an employee of Star Transport. They were contracted with Star Leasing to provide drivers to perform the work under the contract that Star Leasing had with SWIFT. He's doing Star Leasing's work under Star Leasing's contract with SWIFT. He's not alone. He's not working for SWIFT. Correct. In fact, he was provided by Star Leasing to do the job. I don't think that there's sufficient evidence that was presented from Star Leasing who did not participate in the litigation about how that came to be. He was an employee of Star Transport. How Star Leasing had anything to do with Star Transport other than in name and what we can all infer from the relationship based on that is not presented in the record. Star Leasing did not participate. SWIFT's intent in creating the contract that they did with Star Leasing was obviously to create an independent contractor relationship. There are explicit provisions in the contractor agreement that state who is responsible for workers' compensation insurance for any third parties such as drivers that Star Leasing chose to employ to carry out their duties under that contract. And that duty to maintain workers' compensation insurance or occupational accident insurance, whatever it be, was with Star Leasing. Now, the claimant in this case, Mr. Bergman, initially received benefits from Star Leasing. He originally named Star Leasing only on application. After Star Leasing's insurance carrier went bankrupt, it's my understanding that Star Leasing themselves were paying benefits to the claimant. My client, SWIFT, did not even become a named party until December 2014, which is about nine months after the application was filed. I think that the commission decision was correct in the sense that they determined that my client's witness, Mr. Berry, was more credible than the claimant in terms of the relationship between the parties. I don't believe that the claimant's testimony about his impression of who was controlling his work would be sufficient to impugn the testimony from my client's witness, Mr. Berry. And that was the same exact determination reached by the commission. And who did he receive his W-2 from? Star. So not SWIFT? Not SWIFT, no. And actually, I can give you the specific... Who was that direct deposit? Was that a direct deposit that got his W-2 issued? He... Star. Right. He received them from Star. It's on C-182 is the site. And that's another, I think, big difference in the independent contractor cases that have come before this court. And at the very least, in many of those cases, the claimant would have received a 1099 from the company that he was claiming was his employer. That was never shown in my... In this case, my client never issued a 1099 to Mr. Bergman. Why would they? He was receiving a W-2 from his actual employer. Again, I think the most important issue is the direction and control that was observed over Mr. Bergman. And the commission determined that evidence in favor of SWIFT showing that SWIFT did not have control over Mr. Bergman's work. As far as the argument that SWIFT and Star were some kind of shell corporation arrangement, again, that was not raised... I really think it was raised at the circuit court level. I could be wrong, but it certainly was not raised at the commission level. The case that was cited, Walker v. Dominick's, which is a 1988 case from this court, I don't think that's applicable. That involved a non-party who owned the defendant, Dominick's. They were a whole new subsidiary of Fisher Foods. It was about introduction of evidence, particularly financial statements from Fisher Foods. I don't see how that would apply, other than the broad statement that corporate identities are going to be disregarded when there's such a need of interest. There was no testimony or evidence to suggest that that was the intent in creating this agreement between Star Racing and SWIFT. I think it's just a stretch to even make that argument. There's also no discussion of what is required to show that there is a shell corporation and we should disregard the corporate identities by either party. The other aspect that I think Berman's attorneys focused on all the way up was this provision that SWIFT was to retain exclusive possession, control, and use of the leased equipment under the terms of the agreement. But again, this court has recognized in where that kind of term is not going to be the end-all, be-all of whether there was control over the performance and manner of performance of employees' work under the agreement. That was also recognized in Robertson, the 2007 Supreme Court case, that this does not mandate finding that the driver was mentally ill for all purposes. Other than that, I think everything else is in my brief. Also, any other questions? Thank you. Thank you. Thanks. Counsel is graciously allowed to concede time to me. The issue, Myles K. Allen, on behalf of the Illinois Insurance Guarantee Fund, the issue of the shell corporation was brought up. That actually was the ruling from the arbitrator in the underlying trial. The reason the argument was a shell corporation is that star leasing, and people are again throwing around the star entity. There was no W-2 entered into evidence. There was no pay stuff entered into evidence. There's no indication that star leasing ever paid this fellow or he ever became an employee of star leasing, the signatory with Swift Transportation. Star leasing was created as an Indiana entity. Two days later, they entered into a contract with Swift Transportation. By an amazing coincidence, their home office was a Swift Transportation terminal at the Gary Airport. By another amazing coincidence, all the equipment of star leasing was 450 pieces of semi-trucks. All of them had Swift model numbers on them, Swift terminal numbers on them. All of their work was, all the trucks were financed by Swift Transportation and put into evidence. There was never a single certificate of authority from the Department of Transportation for star leasing ever to operate a truck in the state of Illinois. There was no indication of star leasing being a licensed leasing company in the state of Illinois. There was no indication that star leasing was ever even licensed to do business. The rest of it was a corporation. Are you taking the petition that, the position of the epaulant that Swift was the employer? Swift was the de facto employer. Can you argue that? No, I could argue. If you're only arguing as an epaulant, that would support the decision below. You can't argue against it or ask for any relief against it. That you have to do as an epaulant. You file the rules of appeal, which you have the right in the world to do. Otherwise, don't order entry against the guarantee fund in the underlying case. If there's an order against the guarantee fund, how can you argue against the order of the circuit court? I think it's unusual for someone to say that an issue wasn't raised before, wasn't preserved before it was even raised at the commission level. If that's the case, I'll find it and it'll be there. It won't be forfeited. But the question becomes, how can you, as an epaulee, argue against an order entered by either the commission or the circuit court without having filed a notice of appeal? Maybe I can, Your Honor. I think you can. In all your arguments, the Arizona law applies and all the rest of the stuff is arguments near post against the decision of the commission. The decision of the commission wasn't entered against my claim against the guarantee fund, so I did not file it. So I suppose the question becomes, if it's not entered against the guarantee fund, where's your standing? It might be to the guarantee fund's interest in future litigation in the event of a future backlash. If that's the case, we have people coming in here from all over the planet to argue in cases because they think in future litigation they may have an issue for them. But a mission can only be raised by an epaulee. An epaulee can raise any argument they wish in support of the decisions of the law, but can never raise an argument against it. They won't. Okay. Well, I mean, for the rest of the time, but in answer to your question, the shell corporation issue was clearly raised. We're going to have a blank decision in the arbitrator. Can I have a question for you? You can. The decision in this case says that temporary total disability was overrun up through November 3rd, 2015, and says that it's because Trump testified convincingly that at the time of his examination, the evidence showed that he recovered on his own. There's only one problem. That examination didn't take place on November 3rd, 2015. It took place on September 9th, 2015. I think the commission is confusing the report with the date of exam, which would have changed the TKD basis back to September 9th. I mean, do you have any information there was another exam on November 3rd? No, Your Honor, and I do believe that was an error in writing. An error in typing? Yes, and I don't think it's sufficient to make a big deal out of this court when we have these legal issues with regards to borrowing and loaning, which as my counsel or my colleague said, and my opposing counsel, there's no issue of this independent contractor. There's the W-2 and the star leasing and all of that, but basically she's admitting that he is in fact an employee of STAR, and the question and the real difficulty with this case is that the commission made a decision as to a legal question based on their contract and Mr. Berry's testimony as to what he believes, which are legal conclusions, not facts. The duty of the commission is to find the facts and then make a legal decision. It's not to take his word for it, it's not to take the contractor's word for it. You're not saying that the president sort of can't testify for a claim that he's an employee or not? I believe that he can't testify. He can testify to factors, and he can say that he doesn't believe that they're an employee or not. But with regards to borrowing and loaning, he can't define the term independent contractor. They can't put him to the contractor. We are finding that this person is an independent contractor because that is a question of fact and of law based on the facts that the commission actually does find, and the problem is they say, well, the contractor says he's an independent contractor. He's an independent contractor, and that's what was already here today. I also want to understand the disposition of the guarantee fund in this case. You filed a motion to join the guarantee fund as a correspondent, did you not? I did, Senator. They opposed it because they filed a motion to dismissing that. The motion was dismissed because the claims weren't covered under Section 534.3 of the Guarantee Fund Act, and the arbitrator granted that motion to dismiss. And did the commission affirm the arbitrator on that issue? Actually, Your Honor, and I don't want to speak out of turn. That part of the case, not doing work on it, severely confuses me. But to be honest, it was my understanding that basically the arbitrator said that this is not the appropriate form for that question. And so the motion dismissed basically wasn't moved on for its merits as to whether or not the animal insurance guarantee fund should be dismissed, but whether it has standing as the arbitrator to hear that issue. You mean it was dismissed without any agreement? Correct, Your Honor. And so I think the arbitrator said as part of his decision, that is something else that does not belong in the Work Comp Act or under the Work Comp Act. And I will decide that and left it as an open question to be decided at a later date by the appropriate form. Okay. Thank you. Thank you. Thank you. Thank you, counsel, all. For the arguments in this matter, we will take them under advisement. The written disposition shall issue.